

**SO ORDERED.**

**SIGNED this 08 day of February, 2008.**

JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TONY REYNOLDS, | ) | |
| | ) | **Case No. 05-42395** |
| Debtor. | ) | Chapter 13 |
| _____ ) | ) | |
| | ) | |
| VICTORIA R. REYNOLDS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **Adv. No. 07-7117** |
| | ) | |
| TONY R. REYNOLDS, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## MEMORANDUM ORDER AND OPINION

This matter is before the Court on Debtor's Motion for Order to Show Cause[1] why Ty Wheeler, and his employer, Kansas Legal Services, should not be held in contempt of court for violating the automatic stay, which motion was filed in the main bankruptcy case, and on the Citation of Contempt and Order to Appear and Show Cause,[2] which is part of the adversary proceeding that Debtor removed from the District Court of Lyon County, Kansas.[3] The Court conducted an evidentiary hearing on Debtor's Motion to Show Cause. At the hearing, the Court made certain observations gleaned from the pleadings on file, and exhibits attached to those pleadings, and from the companion Adversary Proceeding 07-7117, which is the removed divorce case from Lyon County, Kansas. Neither party contested the accuracy of those initial observations, which are incorporated herein by reference, and evidence was then taken in the form of testimony from Ty Wheeler, an attorney with Kansas Legal Services.

After reviewing the pleadings and hearing evidence on this matter, the Court is now prepared to rule. This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

## I.  FINDINGS OF FACT

---

[1]Doc. 29 in Case No. 05-42395. All future citations to the record will be to documents located in the main bankruptcy case, Case No. 05-42395, unless otherwise noted.

[2]Exhibit 1 to Doc. 1 in Case No. 07-7117.

[3]The Citation of Contempt and Order to Appear and Show Cause was entered by Hon. Merlin G. Wheeler in the Lyon County District Court on September 20, 2007 in Case No. 2002DM42. That proceeding was timely removed by Debtor to this Court following the entry of the citation.

2

Debtor Tony Reynolds incurred a debt to Kansas Legal Services (KLS) in 2003 - 2004 arising out of services Ty Wheeler provided as Guardian Ad Litem (GAL) to the Debtor's minor children during his divorce from the mother of those children. The District Court of Lyon County, Kansas ordered each spouse to pay one-half of the GAL fees; Ms. Reynolds apparently paid her share, but Debtor did not.

On July 28, 2005, Debtor filed a Chapter 13 bankruptcy. Neither Ty Wheeler, Kansas Legal Services, nor the District Court of Lyon County, Kansas were provided notice of this bankruptcy, and the Chapter 13 Plan did not specifically reference the $450.50 GAL debt. Although this debt had been owed to KLS since 2003, no evidence was presented of any collection action taken by KLS until May 23, 2007, when Ty Wheeler sent a letter[4] directly to Debtor advising him that he had failed to pay the outstanding GAL debt. At the bottom of the letter, in bold type and all capital letters, it states "**THIS IS AN ATTEMPT TO COLLECT A DEBT.**" The letter warns Debtor that "should you fail to pay the balance in full or make payment arrangements with my officer manager in the next 30 days, I will file a Motion to have you held in contempt of Court."

On June 27, 2007, apparently in response to that letter, Debtor filed an Amended Schedule F,[5] adding KLS as a creditor in the amount of $450.50. He simultaneously served that amendment on KLS.[6] Question 6 on the Notice, which requires Debtor provide the

---

[4]Doc. 30 (Exhibit 1 to Debtor's Motion for Order to Show Cause).

[5]Doc. 26.

[6]Doc. 27.

3

deadline for complaints objecting to discharge of specific debts under 11 U.S.C. § 523, was completed "not applicable." The form then indicates that, because the amendment was filed too late, KLS could file either an objection to confirmation or to the amendment to schedules. KLS did not file an objection to either.

Instead, on July 6, 2007, KLS filed an unsecured Proof of Claim for $450.50. The form specifically asks for "Name of Creditor (The person or other entity to whom the debtor owes money or property);" the only name provided is Kansas Legal Services. The claim makes no representation that the money was owed to any third party, including the District Court of Lyon County, Kansas. Despite KLS's representation to the contrary in its pleadings filed in response to the Show Cause motion (that it was not a creditor of Debtor because the GAL fee is actually a court cost owed to Lyon County), KLS ultimately admitted through counsel at the hearing that if Debtor had paid KLS the debt owed, it would have retained the funds. Hence, it would not have refunded the money back to the County.

On September 12, 2007, Ty Wheeler sent a letter to the presiding state court judge, Judge Merlin G. Wheeler, who is unrelated to Ty Wheeler, informing the judge that he intended to file a Motion to Withdraw from the case as he believed his services were no longer required.[7] Mr. Wheeler then requested "direction regarding the payment of the Guardian Ad Litem's fees," noting that while "Ms. Reynolds made payments faithfully until her balance had been taken care of; Mr. Reynolds has failed to make any substantial effort

---

[7]Doc. 31 (Exhibit 2 to Debtor's Motion for Order to Show Cause).

toward repayment." That letter informed the judge that Debtor had "apparently" filed a Chapter 13 bankruptcy petition at some time in 2005,[8] that Debtor had not originally listed KLS as an unsecured creditor, but that KLS had nonetheless filed a Proof of Claim.

That letter also noted that in May 2007, Debtor amended his bankruptcy petition to include the balance of $450.50 that <u>he currently owes our office</u>."[9] The letter further indicated that "[m]y office has provided to Mr. Reynolds account statements on many times throughout our representation of the minor children," and that although KLS had filed a Proof of Claim in the bankruptcy, no payments have been received to date." After informing the judge that KLS had filed a Proof of Claim in the bankruptcy case, which should have removed any question whether a bankruptcy petition had in fact been filed, Ty Wheeler stated that he would "appreciate any input you might have regarding how to handle this."[10]

On September 20, 2007, only eight days after Ty Wheeler sent his letter to the judge, the judge issued a Citation of Contempt.[11] This is exactly the remedy that Ty Wheeler had threatened he would seek in his letter to Debtor dated May 23, 2007. The citation indicates

---

[8]The Court does not understand why KLS said the bankruptcy had been "apparently" filed when it had already filed a Proof of Claim in the actual bankruptcy proceeding by this point, and well knew a Chapter 13 bankruptcy had in fact been filed.

[9]Emphasis added. Again, there is little doubt that the debt in question was owed to KLS, and their late assertion that it was actually owed to the County is belied by their own prior admissions.

[10]At trial, Mr. Wheeler explained that when he requested "advice on how to handle this," he meant advice on how to withdraw while there was a fee owing, instead of how to collect the debt. He was unable to explain, to this Court's satisfaction, why he did not just file a Motion to Withdraw, indicating that the unpaid GAL fee was tied up in Debtor's pending Chapter 13 bankruptcy proceeding if he felt it necessary that the court know the status of the fee collection.

[11]Doc. 32 (Exhibit 3 to Debtor's Motion for Order to Show Cause).

5

that Debtor failed to abide by the court's orders to pay one-half of the GAL fees and other expenses attributable to his children.[12]  The Citation further ordered Debtor to appear before the Lyon County District Court on October 31, 2007 to show cause why he should not be "punished for contempt of court."

On September 26, 2007, Debtor's attorney sent a letter to Mr. Wheeler, referencing Mr. Wheeler's letter to the state court judge, advising him that the automatic stay prevents any efforts to collect the debt in question and indicating that "your attempt to collect this debt outside of bankruptcy by asking Judge Wheeler to issue a show cause against Mr. Reynolds is a willful violation of the Bankruptcy Court's automatic stay order."[13]  Debtor's attorney reminded Mr. Wheeler that KLS' debt had been added to Debtor's bankruptcy and asked Mr. Wheeler to "immediately withdraw the accusation in contempt which you apparently filed in the District Court of Lyon County, Kansas."  He then reminded Mr. Wheeler of the potential sanctions that this Court could award against both him and KLS for these collection actions, and suggested he consider consulting "competent bankruptcy counsel" because he did not routinely handle bankruptcy cases.

On October 5, 2007, Ty Wheeler sent a letter to Debtor's attorney in response to the September 26, 2007 letter.  A copy of this letter is appended to this decision[14] as the Court

---

[12]The citation indicates that the original fee was in the amount of $250, but that there were additional orders and journal entries in January and March of 2004, which presumably leads to the current amount claimed by KLS of $450.50.

[13]Doc. 33 (Exhibit 4 to Debtor's Motion for Order to Show Cause).

[14]Doc. 34 (Exhibit 5 to Debtor's Motion for Order to Show Cause) and Doc.4 (page 5) in Adversary Proceeding 07-7117.

6

believes the tone of the letter, a copy of which was sent to the state court judge, contributed to the state court judge's later actions. In this letter, Mr. Wheeler claimed he had done nothing to try to collect the debt, but that he was instead "merely informing the judge of an outstanding issue related to my representation." Mr. Wheeler's letter then suggested that because he did not *directly* contact Debtor in an attempt to collect the debt, or *specifically* ask the state court judge to issue the show cause order, that his letter to the judge could not constitute a violation of 11 U.S.C. § 362. Finally, at trial, Mr. Wheeler claims that at some point, he informally requested—in an admitted ex parte conversation[15] with the judge out of the presence of Debtor's divorce or bankruptcy counsel—that the state court judge withdraw the contempt citation. He indicates that the judge declined to do so. Ty Wheeler also suggests this unrecorded, ex parte conversation should immunize him from being found to have violated the automatic stay.

Mr. Wheeler's October 5, 2007 letter also opines, for the first time, that the GAL fees were not "technically" owed to KLS, but instead constituted a debt owed to the Lyon County District Court and that "[his] office was merely requested by the court to track and accept [Debtor's] payments." This new position by KLS came after it had sent a letter to Debtor informing him that he owed the money *to* KLS and that it was attempting to collect that debt and, more importantly, after KLS had filed a Proof of Claim in this Court in which KLS clearly and directly claimed that the debt was owed to KLS. Despite alleging, as far back as

---

[15]ECRO Trial Recording at the following times: 11:19:15, 11:24:55, 11:26:49, 11:27:25, 11:32:35, 11:34:31, 11:38:56, 11:41:10. Ty Wheeler indicated he drafted the October 5 letter after he returned from his ex parte communication with the state court judge; the ex parte communication thus apparently occurred October 5, 2007.

7

October 5, 2007, that KLS was not the true creditor and that Debtor allegedly owed the money directly to the Lyon County District Court, KLS has made no effort to amend or withdraw its Proof of Claim. In addition, the Lyon County District Court has not filed a claim alleging that the money is actually owed to it.

Mr. Wheeler's October 5 letter to Debtor's counsel, which specifically referenced Debtor's bankruptcy case number, concluded with this inflammatory sentence: "You may wish to get your facts straight and think twice before suggesting Judge Wheeler seek the advice of 'competent counsel.'" Mr. Wheeler then sent a copy of that letter to the state court judge for good measure. A review of the letter from Debtor's counsel, however, shows that he never suggested the judge should get competent counsel but rather that Mr. Wheeler should do so.

On October 11, 2007, Debtor's counsel properly and respectfully contacted the state court judge by letter concerning the Citation of Contempt and Order to Appear and Show Cause.[16] This letter explained that he was Debtor's lawyer in the still-pending Chapter 13 case, again providing the judge with the bankruptcy case number, acknowledged that Debtor owed the GAL fees to KLS, indicated those fees had been included in the bankruptcy, and correctly noted that the automatic stay prevented any further proceedings in the divorce case to collect that debt. Debtor's counsel then "respectfully request[ed] that the court consider dismissing the pending contempt citation," and informed the court that he "would be more

---

[16]Doc. 35 (Exhibit 6 to Debtor's Motion for Order to Show Cause). A copy of this letter was, properly, sent to opposing counsel.

than happy to discuss this matter with the court and counsel by telephone conference call, or otherwise, as the court deems appropriate."

On October 16, 2007, the state court judge replied.[17] The letter must be put in time-context to properly understand its contents. It was sent just 10 days after the judge would have received a copy of the KLS letter that inferred Debtor's counsel had suggested the judge needed competent bankruptcy counsel." In this letter, the judge adopted Ty Wheeler's argument, made in his October 5, 2007 letter that "the guardian *ad litem* fees outstanding are not owed to his office, but rather are owed to the court as reimbursement for fees advanced...." The judge then stated that at the time the Citation of Contempt and Order to Appear and Show Cause was issued, "there was no information contained in the court file to indicate that the court had been noticed of the pendency of the claimed bankruptcy case." The letter also states there is still nothing in the file to indicate that the indebtedness owed by Mr. Reynolds to Lyon County was included in the bankruptcy."

Rather than contacting the bankruptcy court for advice or, seemingly, analyzing the breadth of § 362, the judge informed Debtor's counsel that if he wished to have the pending Citation of Contempt dismissed, Debtor's counsel must appear at the scheduled hearing in Emporia (about an hour's drive from his law office), and bring "some verification of not only the pendency of the bankruptcy proceeding but also that the indebtedness now owed to Lyon County was included as a debt in the bankruptcy filings by the debtor."

---

[17]Doc. 36 (Exhibit 7 to Debtor's Motion for Order to Show Cause).

In response to this letter from the state court judge, Debtor's counsel did two things. First, on October 17, 2007, he contacted the Executive Director of KLS seeking her assistance in getting the judge to dismiss the show cause order. KLS declined, as a result of that call, to either file any motion with the state court outlining the relevant bankruptcy law that prevented the court's collection activity, to solicit a telephone conference call with the judge and counsel, or to remove the case to this Court on its own to prevent future harm. Second, upon realizing that KLS was not going to provide assistance and further realizing the state court judge would not allow counsel to discuss the matter by conference call with all counsel present, Debtor filed an adversary proceeding on October 22, 2007 to remove the state court matter involving the contempt citation to this Court.

In removing the matter to this Court, Debtor sought a stay of all proceedings in the District Court of Lyon County, Kansas, and apparently for an adjudication of the contempt citation. According to the documents filed in support of the Notice of Removal, upon receiving notice of the removal of this action to this Court, the state court judge did then enter an order staying all further matters in that proceeding.[18]

The Order of Confirmation[19] in this Chapter 13 proceeding makes it clear that all property of the bankruptcy estate that is not proposed or reasonably contemplated to be distributable under the Plan, shall not revest in Debtor until dismissal or discharge. This means that until discharge, or until the case is dismissed, all property of the estate remains

---

[18]See Doc. 4, p. 25 (Stay Order entered by state court judge on October 25, 2007).

[19]Doc. 13.

in the bankruptcy estate. This includes all post-petition wages[20] and other property acquired post-petition from which Debtor could make payments for pre-petition debts, such as the GAL fees that are central to this dispute.

## II. ANALYSIS

### A. Underlying Law

The automatic stay is encompassed in 11 U.S.C. § 362,[21] and provides one of the most fundamental and important protections afforded to both debtors and creditors under the federal bankruptcy scheme. As recognized by the Tenth Circuit Court of Appeals:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.[22]

---

[20]11 U.S.C. § 1306(a)(2).

[21]This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) became effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

[22]*Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5840-4; H.R. Rep. No. 595, 95th Cong., 1st Sess. 340, *reprinted in part in* 1978 U.S. Code Cong. & Ad. News 5787, 6297).

11

"In order to secure these important protections, courts must display a certain rigor in reacting to violations of the automatic stay."[23]

Section 362 provides, in pertinent part,

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of–

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> ...
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; . ...

Accordingly, under § 362(a)(3), a Chapter 13 petition triggers a stay against any act aimed at obtaining possession of property belonging to the debtor's estate.

Section 362(h) provides the remedy for any willful violation of the automatic stay. It states that "[a]n individual injured by any willful violation of a stay provided by this section **shall** recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[24]  To demonstrate a willful violation of the

---

[23]*In re Soares*, 107 F.3d 969, 975 (1st Cir. 1997).

[24]Emphasis added.  Section 362(h) was renumbered following the 2005 amendments to the Bankruptcy Code, and the comparable section for post-BAPCPA cases is § 362(k), with some additions.

12

automatic stay, "the debtor bears the burden of establishing, by a preponderance of the evidence, that the creditor knew of the automatic stay and intended the actions that constituted the violation; no specific intent is required. Accordingly, a creditor's good faith belief that it had a right to the property is irrelevant."[25]

**B. KLS is the actual creditor in this case**.

One side-issue in this case is whether the debt in question is actually owed to KLS or to the Lyon County District Court. As noted above, KLS consistently and clearly treated this debt as if it were owed directly to KLS until October 5, 2007, when the KLS attorney handling the matter apparently realized for the first time that he had likely violated the automatic stay, and that he needed to find some legal way out of that predicament. First, on May 23, 2007, KLS sent a letter to Debtor, clearly indicating that it was an attempt to collect a debt owed to KLS. That letter made no representation whatsoever that it was merely trying to collect a debt that was actually owed to Lyon County. Second, on June 27, 2007, in response to this letter, Debtor filed an amended Schedule F to include this pre-petition debt, listing KLS as the creditor. Neither KLS nor Lyon County has ever filed an objection indicating that the County is the proper creditor. Third, on July 6, 2007, KLS filed a Proof of Claim in this case, again listing KLS as the only creditor and making no mention that the

---

[25]*In re Johnson*, 501 F.3d 1163, 1172 (10th Cir. 2007). Johnson also holds that "[t]he automatic stay is crucial to effecting the fresh-start policy, *see Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), and no dishonest action by Debtors warrants disciplining our application of the preponderance of the evidence standard to rebalance the competing interests. Moreover, the competing interest of preserving creditor rights is constrained by § 362(d), which permits creditors to seek relief from the automatic stay," and that Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay." *Id.* at 1170–71.

debt was actually owed to Lyon County. Fourth, on September 12, 2007, KLS wrote a letter to the state court judge, wherein it yet again indicated that the debt in question was owed to KLS by stating that Debtor had not paid the balance of $450.50 that <u>he currently owes our office</u>."[26] Finally, at trial, KLS admitted that typically, when it does not receive its court-ordered GAL fees directly from the party who owes the debt, it merely requests payment directly from the County, and that a check is usually issued within a week of the request. As of the date of the hearing, it had not yet received reimbursement from the County.

The state court judge also claimed that the debt was actually owed to the court, rather than directly to KLS, in what appears to be an attempt to immunize KLS from an allegation that it violated the stay. The judge's October 16, 2007 letter stated that the fees are owed to the court as reimbursement for fees advanced." Unfortunately, this statement does not match the other evidence received. For the fees to be owed to the court as reimbursement for fees advanced," the court must first have advanced the fees to KLS. Although the evidence received indicates that KLS could have received payment by the County had it requested such a payment, no such advancement had been made as of the date of the hearing, and certainly not as of the dates KLS took various actions to collect the debt. KLS had not been paid for its services, either by Debtor or by the County, and was seeking payment of those fees directly from Debtor.

Based upon the evidence received, the Court finds the debt in question was owed to KLS. The Court finds that the debt was ordered to be paid by the Lyon County District

_____

[26]Emphasis added.

Court in relation to the divorce proceeding, and that the Lyon County District Court apparently has agreed, either formally or informally, to serve as a guarantor of such debts in the event KLS is unable to directly collect from the party ordered to pay for its services. However, neither the fact that this was a court ordered debt, nor the fact that the County could have become the owner of the debt had it actually paid KLS the fees in question, changes the nature of this debt or the fact that it was owed to KLS at all relevant times.

### C.  The attempt to collect this pre-petition debt was a stay violation.

The parties do not dispute, and the record clearly reflects, that the debt in question was a pre-petition debt, and that KLS, and later the state court judge, attempted to collect this debt during the pendency of the Chapter 13 bankruptcy proceeding without first seeking relief from the automatic stay.  Absent some exception to the automatic stay imposed by § 362, any action to collect on a pre-petition debt is a violation of the automatic stay.[27]  Section 362(b)(2)(B) does allow for the collection of alimony, maintenance, or support without seeking relief from the stay, but only from "property that is not property of the estate."[28] Because this bankruptcy case is a Chapter 13 proceeding that delays vesting of Debtor's property until discharge, all of Debtor's property, not otherwise exempt from collection by creditors, remains property of the bankruptcy estate, including any post-petition earnings.[29]

---

[27]11 U.S.C. § 362(a).

[28]11 U.S.C. § 362(b)(2)(B).  It is unclear whether the debt in question would qualify as support" under this subsection, even if it were applicable.

[29]*See In re Mu'Min*, 374 B.R. 149, 161 (Bankr. E.D. Pa. 2007) (noting that when Congress makes a conscious decision to create an express exception for one kind of nondischargeable debt—here for alimony, maintenance, or support from property that is not property of the estate—but then elects to not create such an exception for the collection

The Court cannot find, and KLS has certainly not provided, any other exception to the automatic stay that could excuse its actions[30]

Another defense raised by KLS, and adopted by the state court judge in his October 16, 2007 letter, is that the debt in question is nondischargeable in bankruptcy. Both letters suggest that this fact could somehow excuse their collection efforts during the pendency of a Chapter 13 proceeding. It does not. As long as the collection efforts are aimed at property of the estate, or could impact the feasibility of the ongoing Chapter 13 Plan, the automatic stay remains in effect, even if the debt in question is nondischargeable.[31]

---

of other nondischargeable debts, rules of statutory construction mandate the finding that collection of other nondischargeable debts is stayed).

[30]Section 362(b)(2)(A)(ii) does allow for the commencement or continuation of an action for the establishment or modification of alimony, maintenance, or support, but does not allow for actions to collect pre-petition debts out of estate property. Section 362(b)(2)(C) was added by the 2005 amendments to the Bankruptcy Code, and now allows for the commencement or continuation of a civil action or proceeding "with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute." However, even if this case were governed by the 2005 version of § 362, the newly added § 362(b)(2)(C) would not be applicable under the facts of this case, as this debt was not subject to an income withholding order of any type.

[31]*See In re Mu'Min*, 374 B.R. at 161 (holding that in a Chapter 13 proceeding "the automatic stay remains in effect, irrespective of a determination of dischargeability under § 523(a)(8)"); *Matter of Branch*, 175 B.R. 732, 734 (Bankr. D. Neb. 1994) (holding that "[w]hen this Chapter 13 case was filed, the automatic stay of 11 U.S.C. § 362(a) prohibited [the creditor] from attempting to collect the nondischargeable student loan balance, except through the Chapter 13 plan or after obtaining relief from the automatic stay or, in the alternative, until awaiting the closing of the case"), and *In re Weatherley*, 169 B.R. 555, 561 (Bankr. E.D. Pa. 1994) (holding that § 362(a) "precludes any post-petition actions by the IRS to collect even nondischargeable pre-petition debts"). *Cf. In re Daniels*, 316 B.R. 342, 354 (Bankr. D. Idaho 2004) (holding that in a Chapter 7 proceeding, prior to the entry of discharge "even creditors holding non-dischargeable debts are prohibited by the automatic stay from resorting to judicial proceedings to collect"); *In re Kearns*, 168 B.R. 423, 426 (D. Kan. 1994) (holding that in Chapter 7 proceeding, the automatic stay applies to any attempt to collect support obligations, which were nondischargeable, from property of the estate).

Although the question of the dischargeability of the underlying debt is not before the Court,[32]  KLS could have received a prompt decision from this Court on that issue had it timely objected to Debtor's amendment or filed an adversary proceeding to determine the dischargeability of the debt owed.[33]  Even if the debt in question were nondischargeable, however, that finding is wholly irrelevant in the context of whether the automatic stay was here violated.  There is no question that § 362 prevented any attempt to collect the debt in question at the time both KLS and the state court judge attempted to force Debtor to pay the debt.  That the debt in question might not ultimately be discharged in this bankruptcy does not alter that fact.  Having made a determination that a stay violation occurred, the Court must next decide whether such violation was willful.

### D.   Formal notice is not required for the stay to be enforced, or for a violation of the stay to be willful.

The Court finds that KLS' initial act to collect on this debt, the letter dated May 23, 2007, was not a willful violation of the stay.  KLS was not originally included in Debtor's bankruptcy schedules, and thus likely did not receive notice of the bankruptcy filing, at least from the Debtor or this Court.  The Court thus finds that, having received no actual or constructive notice of the pending bankruptcy petition, KLS did not willfully violate the stay

---

[32]*See In re Miller*, 55 F.3d 1487, 1490 (10th Cir. 1995) (holding that debt owed to a guardian ad litem and psychologist incurred in a divorce and child support proceeding were nondischargeable under § 523(a)(5) even though the fees were payable directly to the third parties rather than the debtor's former spouse).  *But see In re Wise*, 281 B.R. 248 (Bankr. M.D. Pa. 2002) and *In re Gentilini*, 365 B.R. 251 (Bankr. S.D. Fla. 2007) (both holding that cases that find fees owed to third parties arising out of divorce or child custody matters nondischargeable impermissibly stretch the statutory language of § 523(a)(5) to cover debts that are clearly not protected by the Bankruptcy Code).

[33]*See* Fed. R. Bankr. P. 7001(6) (providing than an adversary proceeding is required to determine the dischargeability of a particular debt).

17

when it sent that May 23, 2007 letter.   Actions taken by both KLS and the state court judge following that initial post-petition contact with Debtor, however, are much more troubling.

After receipt of the May 23, 2007 letter, Debtor promptly informed KLS that he had filed for bankruptcy protection and that its efforts to collect the debt were improper.   In response, KLS sent correspondence to the state court judge, without sending a copy to Debtor's counsel, informing the judge that Debtor had filed for bankruptcy and seeking "advice" on how to proceed.   The state court judge, notwithstanding being told Debtor was in a Chapter 13 proceeding, ordered Debtor to appear before him for the express purpose of showing cause why he should not be held in contempt of court for failing to pay the very $450 pre-petition debt that had been added to his bankruptcy.   This is precisely the remedy that KLS threatened Debtor it would seek if he failed to pay the debt.   As such, this result should not have been surprising to KLS.

Ty Wheeler's later attempt to "unring" the bell, by allegedly requesting the state court judge, during an ex parte contact, to withdraw his order to show cause in light of his realistic concern that he could be held to have violated the bankruptcy court's stay order, was too little, too late.   The judge's issuance of the show cause order, the order to have it served on Debtor by the Sheriff of Lyon County, and even more importantly, his refusal to withdraw the show cause order after Debtor's counsel made appropriate and good faith efforts to informally resolve the issue, also violated Debtor's stay rights.

Another defense raised to the stay violation, which was raised in the state court judge's letter to Debtor's bankruptcy counsel, was that the Lyon County District Court was

18

not scheduled as a creditor in this case. He apparently believed that this fact somehow excused the state court's collection efforts during the pendency of Debtor's Chapter 13 bankruptcy proceeding. This fact does not provide a defense.

Debtor did not schedule Lyon County District Court as a creditor because KLS was the party attempting to collect the debt and KLS filed a Proof of Claim clearly stating it was the creditor.[34] Moreover, that KLS was listed as the impacted creditor and not Lyon County District Court does not at all excuse the state court's collection actions.[35] In fact, the state court judge, despite being specifically informed by KLS of the pending bankruptcy, nevertheless ordered Debtor to appear in his courtroom concerning this debt, and indicated that Debtor, through his attorney, was free to bring "actual proof" of the bankruptcy filing at that time. Why the state judge required Debtor and his counsel to go through this trouble and expense is of tremendous concern to this Court, considering that bankruptcy filings are public records, and the judge had already been advised of the bankruptcy case number and could easily have confirmed these facts.

---

[34]In its closing argument, the KLS attorney arguing the matter further claimed that KLS would withdraw its Proof of Claim when it received payment from the County. That is further evidence that KLS believes the claim was proper, as filed, and that the money was owed directly to it by Debtor. By withdrawing the Proof of Claim only after receiving payment by the county, KLS further demonstrates that the County was merely a guarantor, either formally or informally, of the debt owed to KLS by Debtor.

[35]See In re Clayton, 235 B.R. 801, 808 (Bankr. M.D.N.C. 1998) (holding that "[e]ven where a creditor is not listed as such in the schedules to the petition, the creditor may be charged with notice of the bankruptcy if it were in possession of sufficient facts to cause a reasonably prudent person to make further inquiry") and In re Herbst, 167 B.R. 983 (Bankr. N.D. Fla. 1994) (holding creditor liable for willful violation of automatic stay where creditor had actual knowledge of the pending bankruptcy proceeding, even though he was not listed on the debtor's original list of creditors and mailing matrix). Cf. In re GGSI Liquidation Inc., 355 B.R. 691, 701 (Bankr. N.D. Ill. 2006) (holding "[i]t is clear from the plain language of § 362 that the automatic stay 'operates as a stay, applicable to all entities' and is not only restricted to creditors of the debtor. 11 U.S.C. § 362(a)") and America Online, Inc. v. CN Productions, 272 B.R. 879, 882 (E.D. Va. 2002) (noting that automatic stay applies to "all entities" not just creditors of the debtor).

19

"Notice of the bankruptcy filing need not be formal or official to put a creditor on notice."[36]  Knowledge of the bankruptcy proceeding is sufficient to find a willful violation of the automatic stay if the creditor receives enough information to cause a reasonably prudent person to make further inquiry.[37]  KLS clearly informed the judge that a bankruptcy petition had been filed.  The judge did not seem to doubt this fact, but instead apparently believed that he could continue with his efforts to collect this pre-petition debt until the state court received some kind of "official" or formal notice from the bankruptcy court and until the Lyon County District Court was formally added to Debtor's schedules.  That is simply not the law.

The Tenth Circuit Court of Appeals made it abundantly clear, in *In re Johnson*, that upon receiving reasonable notice that a bankruptcy has been filed, a creditor has a duty to inquire further, and cannot simply turn a blind eye to the information the creditor has received because such information was not in the form of a formal notice.[38]  The state court judge, or his staff, should have contacted the bankruptcy clerk[39] or the bankruptcy judge if he did not believe Debtor had a legitimate case pending, or if he had questions whether the bankruptcy law prohibited him from taking collection efforts.  Unfortunately, his decision

---

[36]*In re Johnson*, 501 F.3d at 1172.

[37]*Id.* at 1173-74.

[38]*Id.*

[39]As the Tenth Circuit noted in *In re Johnson*, the court "knew [Debtor's] name and address and could easily have called the clerk for the single bankruptcy court covering the area in which Debtors resided."  501 F.3d at 1173. A call to any of the three clerk's offices in Kansas would have revealed the bankruptcy, because their filing records are combined and queries to the clerk's system of records reveal filings from all three courts in the district.

to trust the KLS lawyer's understanding of bankruptcy law and to press on with a contempt hearing despite knowing about the bankruptcy filing, has come with a considerable cost to Debtor. Debtor has incurred well over $1,147.50[40] in attorney fees to stop the improper actions—well more than double the amount of the underlying debt.

The Court finds that the actions of KLS and the state court judge were willful, in that they both attempted to collect this debt after being clearly informed of the pending Chapter 13 bankruptcy.

### E. Debtor is entitled to relief under § 362(h).[41]

Section 362(h) requires a court to award damages to a debtor who has been injured as a result of a willful violation of the automatic stay, including such relief as actual damages, attorney fees, and, in some cases, punitive damages. "Willfulness is to be liberally construed to bolster the protections of the automatic stay and is designed to ensure compliance with the stay by encouraging creditors to seek relief from the court whenever they are on notice of even a potential stay violation."[42] Because § 362(h) states that an individual injured by any willful violation of the stay "shall" recover actual damages,

---

[40]This was the amount of the fees before inclusion of any time spent by Debtor's counsel in preparation for, or participation in, the evidentiary hearing. Counsel also noted that Debtor's divorce counsel had been required to incur fees in relationship to the improper contempt citation, in the sum of $140, for which Debtor will also undoubtedly be held responsible.

[41]BAPCPA renumbered subsection (h) to subsection (k) following the 2005 amendments to the Code. Because these amendments had not yet become effective when this case was filed, however, the Court will refer to § 362(h)(2004), since that is the subsection applicable to this pre-BAPCPA case.

[42]*In re Johnson*, 501 F.3d at 1173 (internal quotations and citations omitted).

including costs and attorney fees, damages under § 362(h) are mandatory if the court determines there has been a willful violation of the stay.[43]

Both KLS and the state court acted in a manner that entitles Debtor to relief under § 362(h), and their belief that they were not bound by § 362 "have no bearing on willfullness."[44] KLS, first by asking for "advice," especially in light of the tone used in the letter, next by allowing the ex parte conversation with the presiding judge on the underlying issue, depriving Debtor's counsel of an opportunity to provide citations to the relevant law to both parties during that conversation, and finally, by sending a copy of a letter directed to Debtor's counsel to that judge, which extrapolated that Debtor's counsel had accused the judge of needing "competent counsel," simply passed the improper collection torch on to the state court judge.

Once the reaction that KLS essentially set in motion actually occurred, KLS declined to even attempt to rectify the situation by filing a motion requesting the court set aside the contempt order, in which it could have provided the state court with the applicable law that precluded issuance or enforcement of the show cause order, or seeking a conference call with the judge where all counsel could participate. KLS also failed to remove the case to this Court to stop the contempt hearing, forcing Debtor's counsel to incur that expense.[45]

---

[43]See In re Heghmann, 316 B.R. 395, 404 n.9 (1st Cir. BAP 2004); In re Roman, 283 B.R. 1, 9 (9th Cir. BAP 2002); and In re Kroh Bros. Development Co., 91 B.R. 525, 541 (Bankr. W.D. Mo. 1988).

[44]In re Johnson, 501 F.3d at 1173.

[45]Furthermore, if KLS truly believed that it or the state court really had the right to collect on this debt, KLS could and should have filed a Motion for Relief from Stay under § 362(d) to seek permission to do so. See In re Daniels, 316 B.R. at 353 (holding that "a creditor acts at its own peril if it fails to seek judicial clarification of the scope of the

The state court judge also violated § 362. Upon being specifically informed of the pending bankruptcy case, he nevertheless issued a contempt citation, and had it served on Debtor by a Lyon County Sheriff or other employee. His actions were based upon the legally incorrect assumption that the automatic stay only applies to creditors who have received formal notice of a bankruptcy, or that the automatic stay does not apply where the applicable debt is nondischargeable.

### F.  Remedy

The Court is going to utilize its broad equitable powers to shape a remedy that is most fitting to the facts of this case. Debtor was forced to spend time and money trying to defend the improper actions taken by KLS and the state court. That said, Debtor presented no evidence that he sustained actual damages, other than attorney fees.

The Court has reviewed the itemization of attorney fees submitted by Debtor's counsel. Because there is nothing to refute that KLS did finally—albeit improperly via ex parte communication— try to persuade the state court judge to withdraw the contempt citation, the Court finds that KLS cannot be held fully responsible for all the damages Debtor sustained. A precise apportionment of the fault under the facts of this case is impossible to accomplish; the Court must simply choose a sum that most closely approximates the relative fault of the parties.

---

automatic stay and requires the debtor to obtain a judicial determination of the issues. Consequences attend that decision").

The Court finds that the fault of KLS was significant in that it set into motion all the events that bring about today's order. Judges trust that counsel appearing before them will provide them an accurate summary of the relevant law when they seek relief; here KLS did not do this and the state court judge apparently relied on KLS' arguments that the collection actions were justified. But KLS admittedly cannot be held responsible for all of the actions of the state court judge. That judge issued the order that caused Debtor's counsel to have to remove the case to this Court, to file the Motion in this Court, and to appear at the trial. Accordingly, the Court will assess $500.00 in attorney fees against KLS, and require KLS to pay that amount to Debtor through his attorney.

The Court finds that the remainder of the attorney fees incurred were more directly caused by the actions of the state court first in issuing the improper contempt citation, and second, in refusing to dismiss that contempt citation, which would have required Debtor and his counsel to physically appear in Emporia to provide proof of a bankruptcy filing that is public record. However, because Debtor has not sought an award of fees against the Lyon County District Court, and any such sanctions could well be barred by the United States

24

Constitution,[46] the Court is not in a position to compel the Lyon County District Court or the judge to pay the remainder of the attorney fees.

The Court does find that the monetary sanctions awarded above are not sufficient to remedy the damages caused to Debtor. The Court will therefore order, as an additional remedy for the willful stay violation, through the use of its 11 U.S.C. § 105 powers, that the debt in question, in the amount of $450.50 plus any accruals that may exist on the debt, be deemed discharged ten days after entry of this order.[47] KLS and Lyon County District Court can determine which party bears the consequences of Debtor not being required to repay this debt, but it is clear to the Court that their collective actions have caused damages to Debtor such that it would be inequitable to require him to repay this debt (assuming it is nondischargeable, which, again, the Court need not decide).

---

[46]State entities, such as the Lyon County District Court, are generally protected from federal suits under the broad protection of Eleventh Amendment immunity provided by the United States Constitution. *See In re Innes*, 184 F.3d 1275, 1278 (10th Cir. 1999). Eleventh Amendment immunity is not applicable where a state has consented to suit in federal court, or where Congress has properly abrogated the immunity. *Id.* Although § 106(a) of the Bankruptcy Code states that such immunity is abrogated for violations of the automatic stay under § 362, most federal courts of appeals have ruled such abrogation to be invalid and have found § 106(a) to be unconstitutional. *See, e.g., Sacred Heart Hosp. of Norristown v. Pennsylvania (In re Sacred Heart Hosp. of Norristown)*, 133 F.3d 237, 243045 (3rd Cir. 1998); *Dept. of Transp. & Dev. v. PNL Asset Management Co. (In re Estate of Fernandez)*, 123 F.3d 241, 244–46 (5th Cir. 1997) *amended by* 130 F.3d 1138 (5th Cir. 1997); and *Schlossberg v. Maryland (In re Creative Goldsmiths of Wash., D.C., Inc.)*, 119 F.3d 1140, 1147 (4th Cir. 1997). *But see Hood v. Tennessee Student Assistance Corp. (In re Hood)*, 319 F.3d 755 (6th Cir. 2003) (holding that § 106(a) is constitutional and a valid abrogation of the states' Eleventh Amendment immunity). A different result occurs, however, when a state entity has brought itself into the bankruptcy process by filing a proof of claim, thereby waiving its sovereign immunity under the narrower provisions of § 106(b). *See Wyoming Dep't of Transp. v. Straight (In re Straight)*, 143 F.3d 1387, 1392 (10th Cir. 1998) (holding that 11 U.S.C. § 106(b) is a constitutional abrogation of sovereign immunity).

[47]KLS and the Lyon County District Court, or any other entity to which this debt may be assigned, are prohibited from attempting to collect this debt even if the bankruptcy in question is dismissed and no discharge order is entered. This ruling is not based upon any finding that the debt in question is dischargeable under any provision of the Bankruptcy Code, but is instead an equitable remedy crafted by the Court for the willful violations of the automatic stay.

The Court acknowledges that this is the first time KLS has appeared before this Court charged with violating the automatic stay, and has otherwise provided exemplary service to both its clients, this Court, and the legal community in Kansas. The Court is thus confident that such actions will not recur. Therefore, the Court finds that no punitive damages are warranted. It is certainly not the Court's intent to punish KLS or the state court for their respective actions, but instead, to compensate Debtor for the actual damages he sustained as a result of those actions.

**F.    The Citation of Contempt and Order to Appear and Show Cause must be dismissed.**

The only remaining issue before the Court is the pending Citation of Contempt and Order to Appear and Show Cause that was issued in the state court action before it was removed to this Court in Adv. No. 07-7117. The Citation of Contempt and Order to Appear and Show Cause was solely related to Debtor's failure to pay the pre-petition debt owed to KLS. Holding Debtor in contempt of court for failing to pay this pre-petition debt during the pendency of his Chapter 13 case, or even making him appear for a show cause proceeding on that debt, is clearly prohibited by § 362, and for that reason alone the Citation of Contempt and Order to Appear and Show Cause must be dismissed.

In addition, the Court has also ordered, as a remedy for the improper actions taken against Debtor in violation of § 362, that the debt in question is deemed fully discharged and Debtor cannot be called to answer to such debt in the future. That ruling provides a separate basis for ordering a dismissal of the Citation of Contempt and Order to Appear and Show

26

Cause.  Therefore, the Court will dismiss the Citation of Contempt and Order to Appear and Show Cause and remand the case back to state court for all further proceedings, if any are needed, not inconsistent with today's order.

## III.   CONCLUSION

I have great respect for the work done by my state court colleagues, and know the work is complex and difficult, without having to also understand the federal bankruptcy law that undoubtedly complicates their work.   Furthermore, this Court does not mean to underestimate how difficult it is for state court judges to know when the proceedings over which they preside are stayed, and when they are not.   For example, I want to be sure my colleagues understand that 11 U.S.C. § 362 does not prevent them from continuing their necessary and valuable work in connection with the establishment of paternity, or establishment or modification of an order for domestic support obligations, or concerning child custody or visitation, or for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate, or regarding domestic violence.[48]   But § 362 does most assuredly prevent them from taking action during the pendency of a Chapter 13 case, like was taken here, to collect a pre-petition GAL debt arising out of a divorce proceeding, unless someone files a motion to be relieved from the restrictions of § 362, and receives an order so allowing.

---

[48]*See, e.g.,* 11 U.S.C. § 362(b)(2)(2004) and 11 U.S.C. § 362(b)(2) (2005).  Property division is a little more complicated.  It is not among the stay exceptions contained in § 362(b).  *See* § 362(b)(2)(iv) (2005).  When a bankruptcy is filed, an estate is created and all of the debtor's property is included in it.  Notwithstanding this statute, my state court colleagues should also know that bankruptcy judges will routinely grant stay relief, at least for the purpose of concluding the dissolution of a marriage and permitting division of the marital property.

As the Tenth Circuit has noted, the "automatic stay is crucial to effecting the fresh-start policy."[49]  The problems that can be caused, and the expense that a debtor can incur, from creditors who do not like the policy, or who do not think they are bound by the law that effectuates that policy, are easily demonstrated by the facts of this case.  And it should not come as a surprise that debtors in this Court are typically among the least able in our society to pay such unwarranted costs.  For the above mentioned reasons, the Court sustains Debtor's Motion to assess damages against KLS in the amount of $500.

The Court also orders, in the exercise of its equitable discretion, that the debt in the amount of $450.50 is deemed discharged ten days after entry of this order.[50]  This remedy is in addition to the $500 in attorney fees that KLS is required to pay.  Again, the decision to deem the debt discharged is not based upon a finding that the debt fits within any exception to discharge, but is instead based on the Court's equitable power, which it uses in an attempt to try to make Debtor whole from the improper collection actions taken against him.

In addition, the Court finds that the Citation of Contempt and Order to Appear and Show Cause must be dismissed not only because that order itself violates the automatic stay, but because the underlying debt for which Debtor was being required to answer has now

---

[49]See In re Johnson, 501 F.3d at 1170.

[50]If the County has already paid the GAL fee to KLS, this order does not dictate what happens to that money. That is between KLS and the state court.  Similarly, if KLS has not received payment from the state court, this decision does not dictate the result of any outstanding request for payment.

been deemed discharged in this proceeding. The state court proceeding will be remanded for further proceedings, if the state court deems them appropriate, consistent with this order.

This Court also desires to use the medium of this opinion to invite state court judges who have questions about the nature and extent of the stay powers of 11 U.S.C. § 362, which this Court hopefully has indicated herein are exceedingly broad, to personally contact bankruptcy judges in their jurisdiction if they have questions about a particular fact pattern. The filing of bankruptcy petitions can and assuredly do halt ongoing state court proceedings in a fashion that is not conducive to judicial efficiency. In fact, the cessation of state court foreclosure and other proceedings is a prime incentive for some debtors to take advantage of their statutory right to resort to bankruptcy. For that reason, if ever a state court judge has questions about whether a bankruptcy actually has been filed, or its impact on a state court proceeding, this judge and I certainly believe most bankruptcy judges would be pleased to informally provide information that will enable the state court judge to understand the law and how it impacts the state court processes. Bankruptcy judges would much prefer to informally visit with state court judges, in an effort to prevent violations of the automatic stay, than be forced to deal with the consequences of a stay violation that could have been prevented with better communication.

**IT IS, THEREFORE, BY THE COURT ORDERED** that Kansas Legal Services pay Debtor, through his counsel, $500.00, within thirty days of the date of this order, and that the debt owed by Debtor to Kansas Legal Services (or the County, if the County has reimbursed KLS since the trial) in the amount of $450.50 (and any accruals) for the guardian

29

ad litem fees associated with Lyon County District Court Case No. 2002DM42 is deemed fully discharged. This discharge is effective ten days after the entry of this order, and will remain unaffected by any future conversion or dismissal of this bankruptcy case.

**IT IS FURTHER ORDERED** that the Citation of Contempt and Order to Appear and Show Cause, which was removed to this Court by Debtor in Adv. No. 07-7117, is dismissed.

**IT IS FURTHER ORDERED** that Lyon County District Court Case No. 2002DM42 is remanded back to Lyon County, Kansas District Court for all further proceedings consistent with this opinion, and that Adv. No. 07-7117 is hereby dismissed.

###

# KANSAS LEGAL SERVICES

527 Commercial, Suite 521
Emporia, Kansas 66801
Telephone (620) 343-7520
Fax (620) 343-6898

Ty R. Wheeler
Managing Attorney

*Judge Wheeler*

October 5, 2007

Paul D. Post
Shadow Wood Office Park
5897 Southwest 29th Street
Topeka, KS 6614

RE:     Reynolds vs. Reynolds
        Case No. 02D42
        Bankruptcy Case No. 05-42395

Dear Mr. Post:

I am in receipt of your recent letter regarding my firm's alleged attempt to collect Mr. Reynolds' debt outside of the bankruptcy court. I am quite disappointed and put off by the harsh and accusatory tone you felt necessary to take in your letter. I am well aware of the statutes concerning bankruptcy law and have not in any way violated said laws.

Since you have a copy of my letter to Judge Wheeler you can see that I made no request for any collection action against Mr. Reynolds. As I was requesting to be allowed to withdraw and the cost assessed had not been paid I was merely informing the Judge of an outstanding issue related to my representation. From my limited practice in front of the Bankruptcy Court I am fairly certain I have to make some attempt to collect a debt from the debtor in order to be in violation of the automatic stay provisions.

As you should be aware I was Court appointed to be the GAL for Mr. Reynolds's children. Judge Wheeler assessed my fees in that case as part of the Court cost. Technically your client did not owe any money directly to my office. My office was merely requested by the court to track and accept Mr. Reynolds' payments. He was however obligated to repay the District Court for the cost accessed. I am not sure if your client included his debts to the District Court in his bankruptcy.

If you would have actually read and reviewed the Citation of Contempt and Order to Appear and Show Cause prior to sending your letter, you would have noticed that said order was not prepared by my office nor does my name appear on anything other than the Certificate of Service. The Citation came directly from Chief Judge Merlin G. Wheeler. As I have taken no part in filing any action against Mr. Reynolds I do not have the ability to withdraw any accusation. I would advise your client to plan on appearing at the hearing scheduled October 31st, 2007, as I have no authority to withdrawn the Court's Citation.

Addendum to the Memorandum Order
and Opinion in the case of:
Tony Reynolds, Case No. 05-42395
Adversary No. 07-7117


Member Agency
United Way

If you are still interested in seeking the withdraw of the contempt citation you will need to take that matter up with Chief Judge Merlin G. Wheeler. You may wish to get your facts straight and think twice before suggesting Judge Wheeler seek the advice of "competent counsel".


Sincerely,


Ty R. Wheeler
Managing Attorney

/tlw
Cc:     Judge Wheeler
        Michael Halleran
        Steve Davis
        Michael Helbert

*Nov. 2007*
*Dianna Muller, Deputy*